UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

| | |
|---|---|
| TRACFONE WIRELESS, INC., a Delaware corporation, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) Civil Action No. ) 13-23066-CV -WILLIAMS |
| CLEAR CHOICE CONNECTIONS, INC., an Ohio corporation; CCC, INC., an Ohio corporation; and AMY SULEIMAN, an individual, | ) ) ) ) |
| Defendants. | ) ) ) |

**PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION
AND INCORPORATED MEMORANDUM OF LAW**

Plaintiff, TRACFONE WIRELESS, INC., ("Plaintiff" or "TracFone"), by and through its undersigned counsel and pursuant to Fed.R.Civ.P. 65, hereby moves for entry of a Preliminary Injunction against Defendants CLEAR CHOICE CONNECTIONS, INC., CCC, INC., and AMY SULEIMAN (collectively, "Defendants"), and as grounds therefore states as follows:

**INTRODUCTION**

TracFone seeks injunctive relief for Defendants' infringing use of TracFone's federally registered trademarks, SIMPLE MOBILE®, NET10®, STRAIGHT TALK®, REUP® and related family of trademarks (collectively, the "TracFone Marks"), along with Defendants' unlawful attempts to divert customers from TracFone through the use of trademark infringement, misrepresentations, metatags, Internet search keywords, and false representations at domain names that incorporate the famous and distinctive TracFone Marks (collectively, the "Infringing Domain Names") (together these activities are referred to as the "Infringing Activities"). Defendants' Infringing Activities are causing, and will continue to cause, irreparable harm to

TracFone's reputation, goodwill, and rightful market position.  Defendants have refused to cease and desist their Infringing Activities despite TracFone's repeated demands.

For the reasons stated herein, TracFone requests the Court to issue an injunction (i) prohibiting Defendants from conducting the Infringing Activities; (ii) mandating that Defendants remove all Infringing Activities from the Internet, and all advertising, promotional, and marketing material; and (iii) expediting discovery allowing TracFone to inspect and copy Defendants' books and records relating to the Infringing Activity.

TracFone does not request this relief lightly. Without entry of the requested relief, Defendants' Infringing Activities will irreparably harm TracFone in that prospective or actual customers will believe Defendants' products or services are, or are affiliated with, TracFone's products and services.  Indeed, such harm has already occurred, and in view of Defendants' practice of deceiving consumers, is likely to occur again.  Accordingly, TracFone requests that this Court issue the requested order.

## II.    FACTS

### TracFone's Famous Marks

TracFone is the largest provider of pre-paid wireless telephone services in the United States, with over twenty million customers and products sold in over 100,000 retail locations throughout the continental United States, Hawaii, Alaska, and Puerto Rico.  Complaint of TracFone ("Compl.") at ¶ 8[1].  TracFone has exclusively and continuously used in interstate commerce throughout the United States, without abandonment, the SIMPLE MOBILE®, NET10®, STRAIGHT TALK®, REUP® and related family of trademarks in connection with

---

[1] And see Declaration of Richard Grelewicz in Support of Motion for Preliminary Injunction, attached herto as Exhibit "H."

2

prepaid wireless telecommunications services, wireless phones and related goods and services (collectively, the "TracFone Goods & Services").  Compl. at ¶ 9.

TracFone owns all rights, title, and interest in and to the TracFone Marks in connection with the TracFone Goods & Services, and is the owner of numerous federal trademark registrations for the TracFone Marks listed in <u>Exhibit A</u>, each of which is valid and subsisting, uncancelled and unrevoked.  U.S. Trademark Registration No. 3,118,250 for the NET10® mark has achieved incontestability under 15 U.S.C. § 1065.  Compl. at ¶ 10.  TracFone's registrations are *prima facie* evidence of the validity of the TracFone Marks, of TracFone's ownership of the TracFone Marks, and of TracFone's exclusive right to use the TracFone Marks in commerce on or in connection with the TracFone Goods & Services.  Compl. at ¶ 11.

The TracFone Goods & Services, offered under the TracFone Marks, are advertised, offered for sale, and sold at major nationwide retailers such as Wal-Mart, Target, Walgreens, and CVS, in addition to authorized online retailers such as Walmart.com and Amazon.com.  Compl. at ¶ 12.  In addition, TracFone has invested substantial resources to advertise, promote, market, offer for sale, and sell the TracFone Goods & Services under the TracFone Marks in the United States, thereby establishing valuable common law rights in the TracFone Marks in addition to the rights afforded by its federal trademark registrations.  Compl. at ¶ 12.

As a result of TracFone's continuous and exclusive use, extensive advertising and promotion, substantial number of subscribers, and widespread and prominent placement in thousands of authorized national retail locations (both in-store and online), TracFone Marks are well-known, distinctive, and famous.  Compl. at ¶ 13.  In addition, the TracFone Marks have become widely and favorably known as identifying TracFone as the source of the TracFone Goods & Services, and have acquired invaluable fame, goodwill, and reputation among members

of the trade and the consuming public in the United States. Thus, the trade and the consuming public have come to recognize and associate the TracFone Marks as an indicator of the quality of the goods and services that are provided by TracFone under the TracFone Marks. Compl. at ¶ 14.

**Defendants' Unlawful Activities**

Defendants are online retailers of wireless telecommunications products and services that operate websites at the domain names NET10GSM.COM and MYSIMPLEMOBILEREUP.COM.

Notwithstanding TracFone's prior and exclusive rights in and to the NET10®, SIMPLE MOBILE®, and REUP® marks, Defendants registered the NET10GSM.COM and MYSIMPLEMOBILEREUP.COM domain names, which incorporate TracFone's distinctive and famous NET10®, SIMPLE MOBILE®, and REUP® word marks (the "Infringing Domain Names"). Defendants have used and are continuing to use the Infringing Domain Names to direct Internet traffic to its websites that prominently display the NET10®, SIMPLE MOBILE®, and REUP® marks and that falsely state they are "Authorized Retailers" to confuse consumers or potential consumers as to the source, origin, sponsorship, endorsement, or affiliation of the goods or services, thereby intentionally capitalizing on the goodwill that TracFone has long established in the TracFone Marks.

The Infringing Domain Names were registered through the use of a privacy service, namely, Domains by Proxy, LLC. A true and correct copy of the WHOIS records for the Infringing Domain Names is attached hereto as Exhibit B. Defendants contacted TracFone directly after TracFone advised Domains by Proxy of Defendants' infringing activities. A true

and correct copy of correspondence from Domains by Proxy in response to TracFone's inquiry regarding the identity of the registrant is also attached hereto as Exhibit C.

The Infringing Domain Names wholly incorporate TracFone's protectable NET10®, SIMPLE MOBILE®, and REUP® marks. Thus, the Infringing Domain Names are confusingly similar to, and dilutive of, the famous NET10®, SIMPLE MOBILE®, and REUP® marks – and violate TracFone's exclusive trademark and service mark rights in and to the NET10®, SIMPLE MOBILE®, and REUP® marks in the United States.

Defendants have willfully and intentionally been using the TracFone Marks in connection with competing and/or complementary telecommunications goods and services, in a manner that is in violation of TracFone's trademark rights. True and correct copies of representative printouts from the websites found at the Infringing Domain Names are attached as Exhibit D.

Defendants began using the TracFone Marks long after TracFone's use and registration of the TracFone Marks, and continue to use the TracFone Marks in connection with the promotion and sales of its competing and/or complementary telecommunications services.

TracFone has made repeated demands that Defendants immediately cease and desist from further use of the TracFone Marks and assign the Infringing Domain Names to TracFone. However, Defendants have failed and refused and continue to fail and refuse to comply with these demands, and is continuing to engage in the unlawful activities as detailed above.

**ARGUMENT**

I.  **Standard for Preliminary Injunction for Trademark Infringement**

In trademark infringement actions, injunctive relief is appropriate as there is no adequate remedy at law to redress infringement, and infringement by its nature causes irreparable harm. *Athlete's Foot Brands, LLC v. Turner Phase IV, LLC*, 581 F.Supp.2d 1250, 1253 (S.D Fla.

2008), *citing, Tally-Ho, Inc. v. Coast Cmty. Coll. Dist.*, 889 F.2d 1018, 1029 (11th Cir. 1989). As this Circuit has recognized, "in 'ordinary trademark infringement actions . . . complete injunctions against the infringing party are the order of the day. The reason is simple: the public deserves not to be led astray by the use of inevitably confusing marks – even in cases in which more than one entity has a legal right to use the mark." *Angel Flight of Ga., Inc. v. Angel Flight Am., Inc.*, 522 F.3d 1200, 1209 (11th Cir. 2008) (*quoting SunAmerica Corp. v. Sun Life Assurance Co. of Can.*, 77 F.3d 1325, 1336-37 (11th Cir. 1996)). Thus, in trademark cases, the public interest is paramount. *Tiramisu Int'l LLC v. Clever Imports LLC*, 741 F.Supp.2d 1279, 1288 (S.D. Fla. 2010); *Nailtiques Cosmetic Corp. v. Salon Sciences Corp.*, 41 U.S.P.Q.2d 1995, 1999 (S.D. Fla. Jan. 10, 1997). Trademark infringement encroaches on "the right of the public to be free of confusion" as well as "the synonymous right of the trademark owner to control his products' reputation." *Id., citing, James Burrough Ltd. v. Sign of Beefeater, Inc.*, 540 F.2d 266, 274 (7th Cir. 1976).

Because there is no adequate remedy at law for the injury to TracFone's reputation and goodwill caused by Defendants' continuing unfair competition and trademark infringement, injunctive relief is the preferred remedy. As such, it is the remedy provided for in both the Lanham Act and Florida law. *See, e.g., SunAmerica Corp. v. Sun Life Assur. Co. of Canada*, 77 F.3d 1325, 1336 (11th Cir. 1996); *Century 21 Real Estate Corp. v. Sandlin*, 846 F.2d 1175, 1180 (9th Cir. 1998).

A district court may grant a preliminary injunction if the movant establishes the following: (1) a substantial likelihood of success on the merits of the underlying case, (2) the movant will suffer irreparable harm in the absence of an injunction, (3) the harm suffered by the movant in the absence of an injunction would exceed the harm suffered by the opposing party if

the injunction issued, and (4) an injunction would not disserve the public interest. *Osmose, Inc. v. Viance, LLC*, 612 F.3d 1298 1307 (11th Cir. 2010), *quoting, N. Am. Med. Corp. v. Axiom Worldwide, Inc.*, 522 F.3d 1211, 1216 (11th Cir. 2008). As set forth below, TracFone satisfies all four prongs of the established test.

**II.     TracFone is Likely to Succeed on the Merits of its Trademark Infringement, Unfair Competition, and False Designation of Origin Claims**

There is a high likelihood that TracFone will ultimately prevail on the merits of its trademark infringement and unfair competition claims. A trademark infringement claim based on a federally registered mark under the Lanham Act, 15 U.S.C. §1114(1), requires proof: (1) that Plaintiff has a valid mark, (2) that, without authorization, Defendant used the mark or a colorable imitation thereof in commerce in connection with the sale or advertising of goods or services, and (3) that Defendant used the mark in a manner likely to confuse consumers. *North Am. Med. Corp. v. Axiom Worldwide, Inc.*, 522 F.3d 1211, 1218 (11th Cir. 2008).

Section 43(a) of the Lanham Act creates a federal cause of action for false designation of origin by prohibiting the use in commerce of any designation likely to cause confusion: (1) as to the user's "affiliation, connection or association" with another person, or (2) as to "the origin, sponsorship, or approval of [the user's] goods, services, or commercial activities by another person." 15 U.S.C. §1125(a). "To establish a prima facie case of trademark infringement under §43(a), a plaintiff must show '(1) that it had trademark rights in the mark or name at issue, and (2) that the other party had adopted a mark or name that was the same, or confusingly similar to its mark, such that consumers were likely to confuse the two." *Tana v. Dantanna's*, 611 F.3d 767, 773 (11th Cir. 2010).

A. **TracFone owns valid and protectable marks.**

There is no dispute that TracFone's Marks are valid trademarks and that TracFone has acquired common law rights in the Marks. TracFone is the registrant and owner of the Marks. A certificate of registration is

> *prima facie* evidence of the validity of the registered mark and of the registration of the mark, of the registrant's ownership of the mark, and of the registrant's exclusive right to use the registered mark in commerce on or in connection with the goods or services specified in the certificate.

15 U.S.C. §1057(b); *see also* § 495.181, Fla. Stat. (2008) ("The intent of this chapter is to provide a system of state trademark registration and protection substantially consistent with the federal system of trademark registration and protection under the Trademark Act of 1946, as amended."); *Gen. Conference Corp. of Seventh Day Adventists v. Perez*, 97 F.Supp.2d 1154, 1157 (S.D.Fla.2000). Indeed, federal registration of a mark creates a strong presumption of validity. *Coach House Rest., Inc. v. Coach & Six Rests., Inc*., 934 F.2d 1551, 1562 (11th Cir. 1991).

The TracFone Marks are valid and protectable because they are registered on the Principal Register of the United States Patent and Trademark Office ("USPTO"). The USPTO granted TracFone registration for the mark SIMPLE MOBILE® on July 13, 2010, registration for the mark NET10® on July 1, 2008, registration for the mark STRAIGHT TALK® on May 11, 2010, and registration for the mark REUP® on April 23, 2013. These registrations were duly and legally issued, and are valid and subsisting. *Id.* Defendants do not have any right or license to use these marks, and do not own any similar marks. Since the registrations arm the registrant with "*prima facie* evidence of the validity of the registered mark and of the registration of the mark, of the registrant's ownership of the mark, and of the registrant's exclusive right to use the

registered mark," under the Lanham Act, TracFone has valid and protectable marks.  15 U.S.C. §1057(b).

A mark is also entitled to protection based on registration because the USPTO deemed the mark to be inherently distinctive.  *Id*.  *Assuming arguendo* that proof of secondary meaning is necessary, secondary meaning cannot be contested in this case based on Defendants' actions such as buying the TracFone Marks as Google keywords; hiding the TracFone Marks as metatags on Defendants' websites to divert traffic; and using the TracFone Marks in the Infringing Domain Names.  Defendants only conducted these actions based on the goodwill and substantial recognition among consumers of the TracFone Marks, which TracFone has been building by having used the TracFone Marks in commerce since at least as early as 2005 for the NET10® mark, and since at least as early as 2009 for the SIMPLE MOBILE®, STRAIGHT TALK® and REUP® marks.  Compl. ¶ 12.

> **B.  Defendants are continuing to use the TracFoneMarks in commerce to confuse consumers as to the source, sponsorship, or affiliation with Plaintiff's authorized sources.**

Defendants have used, and are using without authorization, TracFone Marks in an unlawful manner to divert customers or potential customers to Defendants' infringing websites.  Defendants not only use TracFone Marks in the uniform resource locator (URL) but also own, maintain, or host websites that are colorable imitations of TracFone's websites.  For instance, Defendants represent themselves on the website Net10gsm.com as "NET10 WIRELESS Authorized Dealer" using TracFone's distinctive color, style, and fonts.  Defendants further place the infringing trademarks in prominent locations on the top of the Defendants' websites and throughout the body of the websites.  Defendants only attempt to dispel confusion in a disclaimer section on the bottom of Defendants' webpage using small and non-conspicuous

9

fonts. *See* <u>Exhibit E</u>. Similarly, Defendants use on the infringing MySimpleMobileReup.com website TracFone's distinctive trademark, logo, color, and arrangement of the SIMPLE MOBILE trademark along with the distinctive REUP® trademark throughout Defendants' websites. Defendants further use same or similar green color and distinctive look to confuse consumers or potential consumers as to the source, origin, sponsorship, endorsement, or affiliation of Defendants' goods or services. *See* <u>Exhibit F</u>. TracFone has never authorized Defendants to use the TracFone Marks in connection with goods or services, and objected to Defendants' use promptly upon learning of it. *See* <u>Exhibit G</u>. Defendants continue to use infringing TracFone Marks, the Infringing Domain Names and websites, and to misrepresent themselves as "Authorized Retailers."

### C. Defendants Have Created a Likelihood of Confusion

In evaluating whether there is a likelihood of confusion between two marks, the Eleventh Circuit applies a multifactor test, evaluating the following seven factors: (1) strength of the mark alleged to have been infringed; (2) similarity of the infringed and infringing marks; (3) similarity between the goods and services offered under the two marks; (4) similarity of the actual sales methods used by the holders of the marks, such as their sales outlets and customer base; (5) similarity of advertising methods; (6) intent of the alleged infringer to misappropriate the proprietor's goodwill; and (7) the existence and extent of actual confusion in the consuming public. *Dantanna's*, 611 F.3d at 774-775 (11th Cir. 2010). Each of these factors strongly favors TracFone.

**<u>Strength of the TracFone Marks</u>**: Based on registration, TracFone is entitled to the presumption that the TracFone Marks are valid and TracFone has a right to use the Marks. In addition, as the USPTO cannot allow registration of marks that are not distinctive (either

inherently or acquired) on the Principal Register, the TracFone Marks are presumptively distinctive. *See Park 'N Fly, Inc. v. Dollar Park and Fly, Inc.*, 469 U.S. 189, 105 S.Ct. 658, 83 L.Ed.2d 582 (1985). Moreover, prior to TracFone's adoption and extensive use of the TracFone Marks, these marks were not commonly used in the telecommunications industry and had no particular meaning. *Arrow Distilleries, Inc. v. Globe Brewing Co.*, 117 F.2d 347, 351 (4th Cir. 1941) ("Another indication of distinctiveness in a trademark consisting of a word singly or in conjunction with another is the frequency of prior use of the word in other marks, particularly in the same field of merchandise or service.").

Through TracFone's exclusive and continuous use for more than eight years for the NET10® mark and more than four years for the STRAIGHT TALK® and SIMPLE MOBILE® marks, extensive advertising and promotion and a substantial number of subscribers, the TracFone Marks have become highly recognized as a symbol of the goodwill associated with TracFone's products and services. Defendants chose to use the TracFone Marks in connection with the offering of its products and services in a blatant attempt to capitalize on such goodwill. Defendants also evidently agree that the TracFone Marks are distinctive enough to purchase the TracFone Marks as Google keywords; hiding the TracFone Marks as metatags on their websites to divert traffic; and using the TracFone Marks in the Infringing Domain Names.

**Similarity of Marks**: Each of the Infringing Domain Names either wholly incorporates one of the TracFone Marks or attempts to incorporate typos or other confusingly similar variations of one of the TracFone Marks. In addition, the websites at the Infringing Domain Names prominently feature the TracFone Marks, including identical or confusingly similar logos and identical colors. Accordingly, as Defendant is using the TracFone Marks, this factor weighs heavily in favor of TracFone.

**Similarity of Goods and Services**:  Defendants are using TracFone's exact trademarks in the Infringing Domain Names, on Defendants' websites at the Infringing Domain Names, through metatags, and keyword searching advertising scheme.  The marks also identify the <u>identical</u> goods, services and facilities.  Defendants and TracFone are direct competitors -- not only do Defendants use TracFone's marks in connection with providing telecommunications products and services, Defendants are using the TracFone Marks so that consumers believe they are actually purchasing authorized TracFone products and services from TracFone or TracFone's authorized dealers, retailers, or agents.

**Similarity of Sales Methods/Customers**:  Both parties conduct business via the Internet whereby they offer for sale and sell their respective goods and services to consumers.  The customers for the parties' goods and services are identical, namely, people who are in the market for a wireless communications device and/or related services.  *See AmBrit, Inc. v. Kraft, Inc.*, 812 F.2d 1531, 1541 (11th Cir. 1986) (establishing "that the products involved are similar is evidence tending to prove the existence of a likelihood of confusion").

**Similarity of Advertising**:  Both parties primarily use Internet advertising, and apparently, both rely on people conducting keyword searches for the TracFone Marks to drive people to their websites.  By using the TracFone Marks in its advertising and domain names, Defendants' intent to divert customers and traffic from TracFone's website to Defendants' websites is clearly designed to prey upon customers who are searching for TracFone's products and services.  Defendants bought the TracFone Marks as Google keywords; hid the TracFone Marks as metatags on the websites to divert traffic; and used the Infringing Domain Names for no legitimate purpose other than to divert and confuse TracFone customers.

**Evidence of Intent**:  Defendants' intent to confuse is a significant factor in trademark infringement cases.  An intent to confuse the public is "strong evidence establishing likelihood of confusion, since one intending to profit from another's reputation generally attempts to make his signs, advertisements, etc., to resemble the others so as deliberately to induce confusion." *Frehling Enters. Inc. v. International Select Group, Inc.*, 192 F.3d 1330, 1340 (11th Cir. 1999).  Defendants have clearly shown an intent to confuse through their repeated actions of registering domain names that incorporate the TracFone Marks and using such marks on the websites associated with these domain names, all in an attempt to profit from TracFone's reputation and goodwill.

Accordingly, each of the foregoing factors for demonstrating likelihood of confusion strongly favors TracFone.  TracFone thus has a high likelihood of success on the merits of its trademark, unfair competition, and false designation of origin claims.

### III.  TracFone Has Suffered and Will Continue to Suffer Irreparable Harm Unless an Injunction is Issued

The Eleventh Circuit recognizes that "once a plaintiff establishes a likelihood of success on the merits of a trademark infringement claim, there is a 'presumption of irreparable harm.'"[2] *Adidas AG v. adidascrazylight2.com*, 2013 WL 1651731 at *7 (S.D. Fla. Apr. 16, 2013) (*quoting*

---

[2]  Although the strength of this presumption has been called into question by the U.S. Supreme Court in *eBay Inc. v. MercExchange, LLC*, 547 U.S. 388, 126 S.Ct. 1837, 164 L.Ed.2d 641 (2006), the courts of this Circuit have held post-*eBay* that a district court may grant preliminary injunctive relief "without the benefit of a presumption of irreparable injury" *or* may "decide that the particular circumstances of the instant case bear substantial parallels to previous cases such that a presumption of irreparable injury is an appropriate exercise of its discretion in light of historical traditions."  *Axiom*, 522 F.3d at 1228.  Here, regardless of whether the presumption is applied, the evidence amply demonstrates irreparable injury to warrant the issuance of a preliminary injunction.

*N. Am. Med. Corp. v. Axiom Worldwide, Inc.*, 522 F.3d 1211, 1227 (11th Cir. 2008)).[3]   In this case, TracFone has sufficiently demonstrated that it is likely to prevail on its infringement claims, and thus irreparable injury may be presumed.

Furthermore, in this case, TracFone need not rely on such a presumption alone. Defendants have registered domain names that each incorporate at least one of the TracFone Marks or a confusingly similar variation thereof, in connection with Defendants' competing business.  Moreover, further adding to the confusion, Defendants prominently display the TracFone Marks and associated logos at websites located at the Infringing Domain Names in order to capitalize on the goodwill and fame of the TracFone Marks, all for Defendants' pecuniary gain.

As a result of TracFone's efforts, members of the consuming public readily identify goods and services bearing the TracFone Marks as being high-quality goods and services sponsored and approved by TracFone.  Defendants' continued actions will result in the further confusion of consumers who will believe Defendants' goods and services originate from or are sponsored or endorsed by, or affiliated with, TracFone.  Thus TracFone will be irreparably harmed if Defendants are permitted to continue to infringe, in that TracFone has lost control of its business reputation, there is substantial likelihood of confusion of the purchasing public, there may be no monetary recovery available, and there is an inherent injury to the good will and reputation of the plaintiff.  *See Adidas* at *7 (granting preliminary injunction where defendants' conduct was "likely to cause irreparable damage to Plaintiffs' respective reputations if they

---

[3]   *See also Tally-Ho, Inc. v. Coast Cmty. Coll. Dist.*, 889 F.2d 1018, 1029 (11th Cir. 1989) ("It is generally recognized in trademark infringement cases that (1) there is not [an] adequate remedy at law to redress infringement and (2) infringement by its nature causes irreparable harm."), *quoting, Processed Plastic Co. v. Warner Comm'ns*, 675 F.2d 852, 858 (7th Cir. 1982); *see also, McDonald's Corp. v. Robertson*, 147 F.3d 1301, 1310 (11th Cir. 1998).

continue because Plaintiffs will not have the ability to control the quality of what appears to be their products in the marketplace.  This damage to Plaintiffs' respective reputations and goodwill could not be easily quantified nor could it be undone through an award of money damages.").

### IV. Balancing the Hardships Tips Decidedly in TracFone's Favor

The harm suffered by TracFone in the absence of an injunction would exceed the harm suffered by Defendants if the injunction issued.  The hardship to TracFone if Defendants are not enjoined from use of the TracFone Marks, including irreparable damage to TracFone's reputation and goodwill, has been discussed above.  In contrast, the harm to Defendants is purely monetary, and based upon the loss of business that Defendants had no legitimate right to obtain.  Defendants have no legitimate interest in using the TracFone Marks without TracFone's permission.  Moreover, given "the probable outcome of this action, this is a loss which [Defendant] may justifiably be called upon to bear." *Corning Glass Works v. Jeanette Glass Co.*, 308 F. Supp. 1321, 1328 (S.D.N.Y.), *aff'd*, 432 F.2d 784 (2d Cir. 1970).

Furthermore, to the extent that Defendants may incur some losses if an injunction issues, a willful infringer cannot be immunized from injunctive remedy because it stands to lose financially.  *See Bulova Corp. v. Bulova Do Brasil Com*, 144 F. Supp. 2d 1329, 1331 (S.D. Fla. 2001).  Here, Defendants have already successfully reaped the benefits of duping the consuming public for a number of months, if not longer.  TracFone is requesting only that Defendants be enjoined from further use of the TracFone Marks that is misleading and deceptive to the public, and that infringes upon TracFone's Marks, resulting in minimal hardship to Defendants.

### V. An Injunction is in the Public's Interest

An injunction would serve the public interest.  Because Defendants' conduct has already caused a substantial likelihood of confusion among consumers, an injunction will serve the

public's interest by eliminating or reducing the possibility for any confusion in the marketplace. *See, e.g., Davidoff & CIE, S.A. v. PLD Intern. Corp.*, 263 F.3d 1297, 1304 (11th Cir. 2001) ("[T]he public interest is served by preventing consumer confusion in the marketplace."); *SunAmerica Corp.*, 77 F.3d at 1334 (noting even in cases involving acquiescence, "the public interest in preventing confusion around the marketplace is paramount to any inequity caused the junior user" by issuance of injunction); *Coach House Rest.*, 934 F.2d at 1564 ("[P]ublic interest in preventing confusion around the marketplace is paramount ....")

## VI. Bond

As discussed above, Defendants have already successfully reaped the benefits of duping the consuming public while their goods and services continue to be offered through their websites. TracFone is requesting that Defendants be enjoined during the pendency of this matter from continued use of the TracFone Marks or other colorable imitations of the TracFone Marks in connection with the advertising, offering for sale, and sale of Defendants' goods and services, In view of the willful nature of the infringement, the likelihood of consumer confusion, and the tremendous threat to TracFone's reputation and goodwill, a bond not in excess of $ 5,000, should be required.

## CONCLUSION

For all of the foregoing reasons, TracFone respectfully requests that the Court grant TracFone's Motion for Preliminary Injunction and enter the proposed injunction order submitted herewith.

Dated:  November 14, 2013	**GREENBERG TRAURIG, P.A.**
*Counsel for Plaintiff*
*TracFone Wireless, Inc.*


*s/Barry L. Rothberg*
Barry L. Rothberg
Florida Bar N.:  0160873
rothbergb@gtlaw.com
GREENBERG TRAURIG, P.A.
333 S.E. 2nd Avenue
Miami, Florida 33131
Telephone: (305) 579-0500
Facsimile: (305) 579-0717

*Of counsel:*

Steven J. Wadyka, Jr.
WadykaS@gtlaw.com
GREENBERG TRAURIG, LLP
2101 L Street N.W., Suite 1000
Washington, D.C.  20037
Telephone: (202) 331-3105
Facsimile: (202) 261-0135


**CERTIFICATE OF SERVICE**

I hereby certify that on November 14, 2013, I caused the foregoing to be filed with the Clerk of Court using CM/ECF.


	*s/Barry L. Rothberg*
	BARRY L. ROTHBERG