IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

| | |
|---|---|
| TRACFONE WIRELESS, INC., a Delaware corporation, | ) ) ) |
| Plaintiff, | ) ) ) |
| v. | ) CASE NO. 1:13-CV-23066-KMW ) |
| CLEAR CHOICE CONNECTIONS, Inc., an Ohio corporation; CCC, Inc., an Ohio Corporation; and AMY SULEIMAN an Individual, | ) ) ) ) ) ) |
| Defendants. | ) |

**PLAINTIFF'S REPLY IN SUPPORT OF
MOTION FOR PRELIMINARY INJUNCTION**

Plaintiff, TracFone Wireless, Inc. ("Plaintiff" or "TracFone"), by and through its undersigned counsel, hereby submits this Reply Memorandum in further support of its Motion for Preliminary Injunction (the "PI Motion") [D.E. 12].

Date: December 12, 2013

Respectfully submitted,

GREENBERG TRAURIG, P.A.
*Attorneys for TracFone Wireless, Inc.*
333 S.E. 2nd Ave., Ste. 4400
Miami, Florida 33131
Telephone: (305) 579-0500
Facsimile: (305) 579-0717

By: /s/ Barry L. Rothberg
 BARRY L. ROTHBERG
 Florida Bar. No. 0160873
 rothbergb@gtlaw.com
 JONATHAN J. RODRIGUEZ
 Florida Bar No. 70431
 rodriguezjo@gtlaw.com

I. INTRODUCTION

To prevail, Defendants must set forth material evidence negating the likelihood of confusion factors, which overwhelmingly favor TracFone. The Response in Opposition (the "Response") falls well short of the mark, asserting that Defendants were authorized to use TracFone's marks pursuant to the doctrine of nominative fair use and a phantom "Agreement," under which they purportedly were granted a "license" to use the marks. The Response also attempts to discount evidence supporting likelihood of confusion by pointing to the use of website "disclaimers." For the reasons set forth herein, none of these assertions are availing.

Defendants do not, and cannot, meet their burden. Other than the self-serving Second Declaration of Amy Suleiman, Defendants fail to provide a scintilla of evidence, including the very "Agreement" granting the purported license. Their alleged use of a disclaimer also is of no import; as a matter of law, it is ineffective in curing the likelihood of confusion caused by Defendants' unauthorized use of TracFone's marks and does not excuse that use. Defendants' assertions beg one critical question: if they in fact had a license to use TracFone's marks, why is there any need to disclaim their association with TracFone?

At bottom, the Response rests upon baseless legal and factual assertions, including unsupported and inadmissible statements of counsel. Defendants cannot refute that the factors of the likelihood of confusion test overwhelmingly favor Plaintiff (in fact, Defendants fail to even address, and thus, concede, that the similarity of the marks and products heavily favor TracFone). Moreover, Defendants misstate the law of this Circuit; a presumption of irreparable harm exists where, as here, TracFone has established a likelihood of success on the merits. Finally, Defendants fail to present any evidence to refute TracFone's well-founded arguments with the respect to remaining factors of the injunctive relief analysis (*i.e.*, balance of hardships, public interest, and bond amount). As such, the Court should grant the PI Motion.

II. ARGUMENT

A. **Defendants Intentionally Mischaracterize the Events Leading Up to Plaintiff's Filing of This Lawsuit.**

Defendants indiscriminately allege that "Plaintiff never attempted to control or regulate Clear Choice's use of [Plaintiff's] marks" and that, upon learning of Defendants' infringement of TracFone's marks, Plaintiff procrastinated before filing the August 26th Complaint and the subsequent PI Motion. Opp. at pp. 3, 12-13. Defendants' misleading allegations warrant

1

clarification. Defendants do not dispute that, on or about June 7, 2013, TracFone "advised Domains by Proxy of Defendants' infringing activities" and that Amy Suleiman ("Suleiman"), was contacted by Domains by Proxy regarding those activities. Decl. of Richard Grelewicz in Support of PI Motion (the "Grelewicz Declaration"), [D.E. 12-8, p. 3, ¶ 11; Complaint, p. 5, ¶ 18; *see also* PI Motion, Exhibit G (containing various correspondence exchanged between TracFone and Suleiman in June and July regarding Defendants' infringement). Defendants' Response neglects to mention that the Parties engaged in extensive settlement discussions between June 13 and August 20, a mere *six days* before the Complaint was filed with the Court.[1]

The Parties then held additional settlement discussions until approximately mid-September 2013,[2] after which the Complaint was served on September 30th. *See* [D.E. 6-1, pp. 1-3]. On October 21st, the deadline for a response to the Complaint, Defendants filed a Motion for Extension of Time [D.E. 5] seeking another month to respond. The Court granted that motion. [D.E. 7]. Thereafter, on November 14th, Plaintiff filed the PI Motion, emphasizing the irreparable harm that Defendants' infringing activities continue to cause to Plaintiff's reputation, goodwill, and market position. [D.E. 12]. After taking advantage of their own delays in responding to the Complaint, on November 21st, Defendants filed a Motion to Dismiss (the "MTD"), alleging lack of personal jurisdiction and improper venue. [D.E. 13]. Four days later, on November 25th, Defendants filed a Request for Extension of Time, seeking an open-ended extension to respond to PI Motion [D.E. 14] pending a ruling on the MTD. Before Plaintiff was able to respond to the requested extension, Defendants decided to file their Response to the PI Motion on December 2, 2013, [D.E. 16], rendering the latest Request for Extension moot.

Plaintiff engaged in good-faith negotiations before filing and serving the Complaint, yet Defendants strung Plaintiff along through settlement negotiations and requests for extensions. Contrary to Defendants' assertions, Plaintiff's actions before and after filing the Complaint reflect anything but delay in enforcing its trademark rights.

**B.    Defendants Cannot Demonstrate Authority to Use TracFone's Marks.**

**1.    Defendants Cannot Prove the Existence of a License.**

The law is clear that the burden of proving the existence of a license rests upon the

---

[1] TracFone is in possession of other e-mail correspondence exchanged with Defendants through September 9, 2013, in which settlement discussions were held between the parties.
[2] *See supra* note 1.

individual or entity who asserts it (*i.e.*, here, Defendants). *See Fodere v. Lorenzo*, No. 09–CV–23120, 2011 WL 465468, at *4 (S.D. Fla. Feb. 4, 2011) ("Because a license is an affirmative defense, Defendants "bear[ ] the burden of proving such license exists.") (citation and internal quotation marks omitted)); *Thermion, Inc. v. Thermion Metalizing Sys.*, Ltd., 423 F.Supp.2d 1146, 1151, 1153 (W.D. Wash. 2006) (same).

Here, Defendants fail to satisfy their burden of proving the existence of a license to use TracFone's marks. In their Response, Defendants haphazardly assert that "Clear Choice entered into a contract ('Agreement') with SD9000 or Cellucom Distribution, Inc. . . . whereby Clear Choice became an authorized retailer of" certain TracFone products, and thus, "legally obtained the right to use Plaintiff's marks." Opp., at pp. 2, 5-6. However, other than the self-serving Second Declaration of Amy Suleiman, not a scintilla of evidence has been presented by Defendants to support those assertions. <u>Importantly, Defendants have not even provided the "Agreement" discussed above – and purportedly entered into by Defendants with "SD9000 or Cellucom Distribution, Inc." – which grants the alleged license to Defendants to use TracFone's marks.</u> This Court would be hard-pressed to find that Defendants have met their burden of proving the existence of a license under these circumstances. *See Thermion, Inc.*, 423 F. Supp. 2d at 1151, 1153 (rejecting defendant's assertion of the existence of a license; defendant failed to provide evidence, and thus, prove that license ever existed to use plaintiff's mark).

      **2.**      **Defendants Cannot Prove Nominative Fair Use.**

The law is clear that the burden of proving nominative fair use rests upon the infringing party (*i.e.*, here, Defendants). *See Bateman v. Mnemonics, Inc.*, 79 F.3d 1532, 1542, n. 22 (11th Cir. 1996). Here, Defendants assert that (a) in order for them to "accurately, fairly, and truthfully market Plaintiff's products and services to the public, Clear Choice must be permitted to use Plaintiff's marks;" (b) they "used only those marks—and only to the extent—that Clear Choice needs to adequately identify or market the TracFone products;" and (c) because each of Defendants' webpages allegedly features a "disclaimer," "a reasonable customer or potential customer reading th[e] disclaimer can quickly determine the relationship Clear Choice has with Plaintiff" and there is no "possible confusion." Opp., at pp. 6-7. Defendants' assertions are unremarkable and underscore the futility of their Response in Opposition.

First, it strains credulity that Defendants seek – and have engaged in – only "nominative fair use" of TracFone's marks, when Defendants do not – and cannot – dispute that (a) they have

registered the NET10GSM.COM and MYSIMPLEMOBILEREUP.COM domain names (the "Infringing Domain Names"), which clearly incorporate TracFone's distinctive and famous word marks (*i.e.*, NET10®, SIMPLE MOBILE®, and REUP®) (the "TracFone Marks"), and (b) they are using the Infringing Domain Names to direct internet traffic to their websites that prominently display the TracFone Marks. *See* Grelewicz Declaration, pp. 3-4, ¶¶ 10-15. Second, it is well-established that "[t]he mere fact that . . . a disclaimer . . . attempts to correct any confusion regarding the origin of the product in question does not excuse [the infringer's] use of [a] mark." *BMW of N. Am. V. Au-tomotive Gold, Inc.*, No. 96–384–CIV–J–20, 1996 WL 1609124, at *5 (M.D. Fla. Jun. 19, 1996) ("*BMW*"). Defendants have not proven authorization (much less a license) to use the TracFone Marks, (*see* Grelewicz Declaration, pp. 4-5, ¶¶ 14-15).

Indeed, it begs the question why Defendants would have an alleged disclaimer if, as they so desperately contend, they were licensees of the TracFone Marks. Nor have Defendants cited any case law that contradicts *BMW's* applicable and well-reasoned conclusion, namely, that Defendants' alleged "use of a disclaimer . . . is ineffective to cure the likelihood of confusion that is the result of" their use of the TracFone Marks. *See BMW*, 1996 WL 1609124, at *5.

Defendants' reliance on *MPS Entertainment, LLC v. Abercrombie & Fitch Stores, Inc.*[3] is wholly inapposite. *See* Opp., at p. 7. There, the plaintiffs – which included a public figure (*i.e.*, Michael "the Situation" Sorrentino) from a television show, *The Jersey Shore* – filed trademark infringement claims related to, among other things, "a press release issued by [defendant (*i.e.* Abercrombie)], which the plaintiffs contend[ed] constituted an advertisement for [Abercrombie's] products." *Id.* at *1. The press release stated that Abercrombie was "deeply concerned that Mr. Sorrentino's association with our brand could cause significant damage to our image. . . . [and has] therefore offered substantial payment . . . to Sorrentino and the producers of MTV's *The Jersey Shore* to have the character where an alternate brand." *Id.* at *2. The court granted summary judgment in favor of defendant, finding that defendant "used only so much of the plaintiffs' name as was reasonably necessary to respond to his wearing [of Abercrombie's] brand." *Id.* at *13. Moreover, the court held, the press release logically could not "suggest [plaintiffs'] sponsorship or endorsement" of Abercrombie's marks or products, because the press release "expressly disassociated" plaintiffs from Abercrombie. *Id.* at *13.

*MPS Entertainment* is easily distinguishable. First, there is no press release or public

---

[3] No. 11–24110–CIV, 2013 WL 3288039 (S.D. Fla. Jun. 28, 2013).

4

figure at issue here. Second, Defendants' use of the TracFone Marks does not compare to Abercrombie's nominative fair use. Defendants have <u>not</u> "expressly disassociated" themselves from TracFone, such that it would be implausible to suggest that TracFone "sponsored" or "endorsed" Defendants and/or the products they purportedly are in the business of selling. Quite the contrary, Defendants' indiscriminate use of the TracFone Marks in the Infringing Domain Names demonstrates Defendants' express intent to associate with TracFone and its products. Indeed, this Court would be hard-pressed to find that the Infringing Domain Names "used only so much of [the TracFone Marks] as was reasonably necessary" to sell Defendants' products. *See MPS Entertainment,* 2013 WL 3288039, at *13.

### C. Defendants Cannot Refute that the Likelihood of Confusion Factors Overwhelmingly Favor TracFone.

Courts in the Eleventh Circuit apply a multifactor test to evaluate the likelihood of confusion between two (2) marks, namely, the following seven factors:

> (1) the strength of the mark; (2) the degree of similarity between Plaintiff's mark and the infringing mark; (3) the similarity of the products that the marks represent; (4) the similarity of the parties' trade channels and customers; (5) the similarity of the parties' advertising media; (6) BEG's intent in using the mark; and (7) evidence of actual confusion.

*It's A 10, Inc. v. Beauty Elite Group, Inc.*, 932 F.Supp.2d 1325, 1331 (S.D. Fla. 2012). However, the plaintiff "need not prevail on all seven factors to succeed in its trademark infringement claim. Rather, the Court looks to the overall balance of the factors to see if a reasonable consumer would be confused by the infringing mark." *Id.*

Here, Defendants do not, and cannot, dispute that the second and third factors (*i.e.*, the similarity of the marks and of the products) weigh heavily in favor of TracFone. *See* Opp., at pp. 8-9 (failing to address those two factors). As such, and for the reasons set forth in more detail below, Defendants cannot refute the overwhelming evidence of likelihood of confusion.

### 1. Strength of Plaintiff's Marks

Defendants do not, and cannot, dispute that the Tracfone Marks are valid and subsisting,[4]

---

[4] Defendants also contend that TracFone's "conduct" – which they fail to define – "gives rise to serious questions about the validity and enforceability of the trademarks in the case." Opp, at pp. 11-12. Defendants attempt to assert the defense of "naked licensing." *Id.* "Under the Lanham Act, [n]aked (or uncontrolled) licensing of a mark occurs when a licensor allows a licensee to use the mark on any quality or type of good [or service] the licensee chooses." *CNA Financial Corp. v. Brown*, 922 F. Supp. 567, 574 (M.D. Fla. 1996) (["W]hen a service mark owner engages

5

and that the federal registration for TracFone's NET10® mark is legally incontestable, because it has been used in commerce for five (5) years after registration. *See* 15 U.S.C. § 1065; Complaint, ¶ 10. The USPTO registrations for the TracFone Marks constitute "*prima facie* evidence of the validity" of the TracFone Marks, as well as TracFone's "exclusive right to use" the TracFone Marks "in commerce on or in connection with the goods or services specified" in the certificates of registration. 15 U.S.C. § 1057(b); *see also* Complaint, Exhibit A, [D.E. 1-5, pp. 1-4 (listing TracFone's various mark registrations, including those at issue in this case, as well the goods and services with which they are associated)]. Moreover, the TracFone Marks are presumptively distinctive by virtue of their valid and subsisting USPTO registrations. *See Park N' Fly, Inc. v. Dollar Park and Fly, Inc.*, 469 U.S. 189, 193 (1985). Finally, because the NET10® mark has been used in commerce for five (5) years post-registration, it is entitled to the presumption that it is a strong mark. *See World Triathlon Corp., Inc. v. Down Syndicated Productions*, 2007 WL 2875456, *3 (M.D. Fla. 2007) (citing *Dieter v. B&H Industries of Southwest Florida, Inc.*, 880 F.2d 322, 328 (11th Cir. 1989)).

Despite the NET10® mark's incontestable status and evidence of the strength of the TracFone Marks, *see* Grelewicz Declaration, pp. 2-4, ¶¶ 3-8, Defendants assert that, because the TracFone Marks "are a mere aggregation of common words such 'net,' 'simple,' 'mobile,' 'reup,' and '10,'" the TracFone Marks are not strong marks. Opp, at p. 8. Defendants' assertion is meritless, as the "synergy of the combined term is entitled to protection under the trademark laws." *Tancogne*, 408 F.Supp.2d at 1246 (*citing California Cooler, Inc. v. Loretto Winery, Ltd.*, 774 F.2d 1451, 1455 (9th Cir. 1985) (rejecting argument that the geographic and generic words "California" and "Cooler" were incapable of achieving distinctiveness; the validity of the composite term "California Cooler" was not judged by examining its parts but rather by viewing the trademark as a whole). Defendants provide no other basis for refuting Plaintiff's evidence

---

in naked licensing, without any control over the quality of the services rendered by the licensee, such a practice is inherently deceptive and constitutes abandonment of any rights to the service mark by the licensor."). Defendants' assertions are purely speculative, and they have failed to prove the existence of any license to use the TracFone Marks. As such, there can be no "naked licensing." Even assuming *arguendo* that a license existed, Defendants fail to present evidence that TracFone did not control the use of its marks, nor engaged in any conduct evincing abandonment of its marks. In fact, the evidence is to the contrary. *See* PI Motion, Exhibit G, [D.E. 12-7, p. 7 (e-mail from TracFone to Ms. Suleiman noting that "TracFone has filed a lawsuit in Virginia on Monday [(July 8, 2013)] and another in Miami yesterday [(*i.e.*, July 11, 2013)] to prevent third parties from purchases [sic] keywords among other infringing activities)].

6

(including the Grelewicz Declaration) and argument that the TracFone Marks are strong marks.

### 2. Similarity of Sales Methods

Defendants do not, and cannot, dispute that both parties conduct business via the Internet and sell their respective goods and services to consumers via that trade channel. Citing *Tana v. Dantanna's*,[5] Defendants nonsensically assert that, because TracFone also relies on advertising and sales via major nationwide retailers and Clear Choice does not, TracFone's and Defendants' sales methods are not similar. Opp., at pp. 9-10. Defendants' assertion is meritless and their reliance on *Tana* for that proposition is misplaced. In *Tana*, the Eleventh Circuit found that the parties' sales methods were dissimilar, because they catered to different customers (*i.e.*, Plaintiff attracted "Hollywood's elite" and "celebrities seeking a safe haven from paparazzi," while defendant "targeted sports enthusiasts"). *Tana* is easily distinguishable from this case, in which both parties cater to the same customer base - customers seeking wireless telecommunications products and services. As such, this factor unquestionably favors TracFone.

### 3. Similarity of Advertising

Defendants disingenuously assert that Plaintiff has provided no evidence that both parties engage in similar methods of advertising. Opp, p. 10. The Grelewicz Declaration affirms that TracFone "advertises and offers for sale its products and services online at the domain names NET10.COM, NET10WIRELESS.COM, and SIMPLEMOBILE.COM." Grelewicz Declaration, [D.E. 12-8, p. 3, ¶ 6]. Moreover, Defendants indisputably admit that "Clear Choice['s] marketing is Internet and telephone based," Opp, at p. 10, and they do not – and cannot – dispute their use and ownership of the domain names, NET10GSM.COM and MYSIMPLEMOBILEREUP.COM, to market their products and services. As such, this factor decidedly favors TracFone.

### 4. Evidence of Intent

In this Circuit, if "a plaintiff can show that a defendant adopted a mark of the plaintiff with the intent of deriving benefit from the reputation of the plaintiff, <u>that fact alone 'may be sufficient to justify the inference that there is confusing similarity</u>.'" *John H. Harland Co. v. Clarke Checks, Inc.*, 711 F.2d 966, 977 (11th Cir. 1983) (emphasis added). "Intent, most often, must be proved by circumstantial evidence." *Tancogne v. Tomjai Enters. Corp.*, 408 F.Supp.2d 1237, 1249 (S.D. Fla. 2005).

---

[5] 611 F.3d 766, 778 (11th Cir. 2010).

Here, Defendants allege that they "did not intend to deceive any customers," because they allegedly use the TracFone Marks pursuant to a license and have a disclaimer on their websites. Opp., at p. 10. As stated previously, Defendants failed to meet their burden of proving the existence of a license, because they failed to submit the "Agreement" (or any evidence for that matter) under which they purportedly have been granted the license. Moreover, Defendants' alleged use of disclaimer is ineffective the cure the likelihood of confusion. *BMW*, 1996 WL 1609124, at *5. The evidence is clear that Defendants' own actions reflect intent to deceive customers, given their undisputed use of the TracFone Marks in the Infringing Domain Names.

5.    **Actual Confusion**

Defendants assert that TracFone has failed to provide evidence of actual confusion. The law is clear, however, that evidence of actual confusion "is not a prerequisite" to finding a likelihood of confusion. *Frehling Enterprises, Inc. v. International Select Group, Inc.*, 192 F.3d 1330, 1340 (11th Cir. 1999). Put another way, proof of actual confusion "is not required when the overwhelming evidence regarding the remaining factors" of the likelihood of confusion test weigh in favor of the trademark holder. *Western Union Holdings, Inc. v. Eastern Union, Inc.*, 316 Fed. Appx. 850, 853 (11th Cir. 2008). Defendants cannot refute the overwhelming evidence that decidedly favors TracFone in the analysis of the other likelihood of confusion factors. Accordingly, the Court is compelled to find that Defendants' use of the TracFone Marks creates a likelihood of confusion, notwithstanding the absence of evidence of actual confusion.

D.    **Defendants Cannot Refute the Existence of Irreparable Harm.**

Defendants contend that Plaintiff is not entitled to a presumption of irreparable harm. Defendants' assertion is a misstatement of Eleventh Circuit precedent, recently reaffirmed by this district, which extends "a presumption of irreparable harm once a plaintiff establishes a likelihood of success on the merits of a trademark infringement claim." *Tiramisu Int'l LLC v. Clever Imports LLC*, 741 F.Supp.2d 1279, 1287 (S.D. Fla. 2010) (applying presumption of irreparable harm) (*quoting N. Am. Med. Corp. v. Axiom Worldwide, Inc.*, 522 F.3d 1211, 1227 (11th Cir. 2008)). Because TracFone made a strong showing above and in its PI Motion that it is likely to succeed on the merits of its trademark infringement claims, irreparable harm to TracFone is presumed. Flouting this circuit's clear precedent, Defendants misleadingly argue that TracFone's alleged "undue delay" in enforcing its trademark rights and prosecuting this lawsuit "bars any conclusion that it will be irreparably harmed." Opp., at p. 13. However, as set

forth above, the record belies any conclusion of "undue delay" on the part of TracFone. As such, and for the reasons set forth in the PI Motion, Defendants cannot dispute that TracFone will be irreparably harmed by their continued infringement of the TracFone Marks.

E.         There is **No** Evidence that the Balance of Hardships Tips in Defendants' Favor.

Defendants contend that TracFone has failed to show that their products and services "are inadequate, too expensive, or of inferior quality," and that, because they allegedly sell "identical resale versions of Plaintiff's products," TracFone will suffer no harm to its reputation and goodwill. Opp., at p. 14. Defendants' assertions are wholly meritless.

Even assuming *arguendo* the Defendants sell "identical resale versions of Plaintiff's products" – an assertion for which Defendants have failed to provide any evidence – the law is clear that "that identical goods sold in an unauthorized manner are not necessarily genuine for purposes of the Lanham Act." *Babbit Electronics, Inc. v. Dynascan Corp.,* 38 F.3d 1161, 1180 (11th Cir. 1994) ("Babbit Electronics"). Put another way, inadequacy, price, and inferiority are not prerequisites "to a finding of a Lanham Act violation." *Babbit Electronics*, 38 F.3d at 1180-81 (rejecting defendant's argument that "there is no violation of the Lanham Act because the articles that are alleged to be counterfeits are actually genuine goods, produced in the same factory" as the allegedly approved goods). The Eleventh Circuit's reasoning on this issue is instructive: "Congress hardly intended to step through the looking glass into a world in which valid trademark owners were only protected from inartful counterfeiters." *Babbit Electronics*, 38 F.3d at 1181. As such, Defendants' assertions in this case are of no moment.

Finally, although Defendants claim that they will be "substantially harmed" if the Court issues a preliminary injunction, Opp, at p. 14 (indiscriminately asserting that they would be "forced to start [their] business again," "hire new employees," and "spend years earning back" their customer base), Defendants submit no evidence in support of that assertion, nor explain why they cannot, for example, simply change the Infringing Domain Names to exclude the TracFone Marks. Accordingly, the balance of hardships tips decidedly in favor of TracFone. *See Sylvan Learning Inc. v. Learning Solutions, Inc.*, 795 F.Supp.2d 1284, 1303 (S.D. Ala. 2011) (where "no specific evidence [was] provided that being unable to use [the mark at issue] will force Defendants' Alabama learning center to close or lay off employees, . . . the Court . . . finds that such consideration is still outweighed by [the plaintiff's] loss of goodwill and of the control

9

of its marks should an injunction not issue.") (*citing Dunkin' Donuts Frnch. Rests. LLC v. Cardillo Capital, Inc.*, 2007 WL 2209245 at *5 (M.D. Fla. July 30, 2007)).

F. **Defendants Fails to Show that an Injunction Would <u>Not</u> Be in the Public's Interest.**

Defendants assert that an injunction would be adverse to the public, because the "public would lose competitive pricing" and "the public interest is served by knowing the names of the products available for purchase" from Defendants. Opp., at p. 15. Defendants' assertions are mere argument, not evidence. Because Defendants fail to present evidence to support their assertions, the Court should find that an injunction would not be adverse to the public interest.

G. **TracFone's Requested Amount of Bond is Appropriate.**

It is well-established that "the amount of security required by [Fed. R. Civ .P. 65(c)] is a matter within the discretion of the trial court and the court may elect to require no security at all." *BellSouth Telecommunications, Inc. v. MCImetro Access Transmission Servs.*, 425 F.3d 964, 970-71 (11th Cir. 2005); *see also Tancogne*, 408 F.Supp.2d at 1253 (setting bond at $10,000); *Sylvan Learning Inc.*, 795 F.Supp.2d at 1304 (finding "no need for a bond to issue"). Defendants attempt to counter TracFone's requested amount of bond through the outrageous assertion (again, simply by way of attorney argument) that "bond be placed at $10 million," because they allegedly "would be out of business" and of Clear Choice's alleged "corporate revenue . . . amounting to almost $1 million per month." Opp., at p. 15. Defendants fail to provide a scintilla of evidence to support this assertion. While the Court has discretion over the amount of the bond, given Defendants' complete failure of proof in this regard, TracFone believes that its requested $5,000 bond is appropriate.

## CONCLUSION

For all the foregoing reasons and as set forth in the PI Motion, TracFone's Motion for Preliminary Injunction should be granted.[6]

---

[6] Defendants argue that the Court should defer the PI Motion until first addressing the personal jurisdiction and venue issues in the Motion to Dismiss ("MTD"). Defendants are mistaken. Defendants do allege that the Court lacks personal jurisdiction over Ms. Suleiman. They do *not* contend that the Court lacks personal jurisdiction over Clear Choice Connections, Inc. and CCC, Inc. As such, because Clear Choice Connections and CCC do *not* dispute personal jurisdiction over them, the Court may immediately consider and rule upon the PI Motion as to those defendants, notwithstanding the pending MTD. *See It's A 10, Inc. v. Beauty Elite Group, Inc.*, 932 F.Supp.2d 1325, 1329 (S.D. Fla. 2013) (considering the merits of a motion for preliminary injunction against a defendant over which the Court's personal jurisdiction was <u>not</u> in dispute).

CASE NO. 1:13-CV-23066-KMW

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and correct copy of the foregoing Reply in Support of Motion for Preliminary Injunction was electronically filed and served via CM/ECF upon all counsel of record, on this 12th day of December, 2013.

By: /s/ Jonathan J. Rodriguez
JONATHAN J. RODRIGUEZ