UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO. 13-CV-23066-WILLIAMS

TRACFONE WIRELESS, INC.,

     Plaintiff,

vs.

CLEAR CHOICE CONNECTIONS, INC.,
CCC, INC., and AMY SULEIMAN,

     Defendants.

_____/

## ORDER ON DEFENDANTS' MOTION TO DISMISS AND MOTION TO TRANSFER

**THIS MATTER** is before the Court on Defendants' Motion to Dismiss or Transfer Action and Incorporated Memorandum of Law and Request for Oral Argument (D.E. 13). The Court has also considered Plaintiff's Memorandum of Law in Opposition to Defendants' Motion to Dismiss or Transfer (D.E. 26), and Defendants' Reply Brief in Support of Its Motion to Dismiss Amy Suleiman as a Defendant (D.E. 27). For the reasons discussed below, Defendant Suleiman's Motion to Dismiss is **GRANTED**, Defendants' Motion to Dismiss or Transfer Venue is **DENIED**, and the Request for Oral Argument is **DENIED**.

### I.     Background

This case arises from a trademark infringement dispute between Plaintiff, a Delaware corporation with its principal place of business in Miami, Florida, and Defendants Clear Choice Connections, Inc. ("Clear Choice"), an Ohio corporation, and Amy Suleiman, an individual residing in Ohio. (D.E. 1, Compl. ¶¶ 2-4.) Plaintiff alleges that Defendants infringed on various trademarks registered to Plaintiff (Compl. ¶ 11) by

1

using infringing domain names to direct Internet traffic to their websites (Compl. ¶ 17). Plaintiff alleges various causes of action including trademark infringement, false designation of origin, dilution, and cybersquatting under the Lanham Act, 15 U.S.C. § 1051, *et seq.*, 15 U.S.C. § 1125(a)(c)(d). (Compl. ¶¶ 25, 33, 37.) Additionally, Plaintiff alleges that Defendants violated the Florida Deceptive and Unfair Practices Act, Fla. Stat. §§ 501.201-213. (Compl. ¶¶ 54-55.)

On November 21, 2013, Defendants filed a Motion to Dismiss or Transfer, arguing that: (1) this case should be dismissed because the Court lacks personal jurisdiction over Defendant Amy Suleiman, and (2) the Southern District of Florida is an improper venue for this case. (Defs.' Mot. to Dismiss or Transfer Action and Inc. Mem. of Law and Req. for Oral Arg. ("Defs.' Mot.") at 1.) Alternatively, Defendants request that this case be transferred to the United States District Court for the Northern District of Ohio pursuant to 28 U.S.C. § 1406, or if venue is proper in this district, under 28 U.S.C. § 1404. (Defs.' Mot. at 1.)

## II.     Motion to Dismiss for Lack of Personal Jurisdiction

The Defendants first argue that the Court lacks personal jurisdiction over Defendant Amy Suleiman, who is the Director of Operations for Clear Choice. Suleiman Aff. ¶ 1. Plaintiff has the burden of establishing a *prima facie* case of personal jurisdiction for each defendant. *Stubbs v. Wyndham Nassau Resort and Crystal Palace Casino*, 447 F.3d 1357, 1360 (11th Cir. 2006). When a defendant has submitted affidavits challenging a court's jurisdiction, the burden traditionally shifts back to the plaintiff to produce evidence supporting jurisdiction, unless the defense affidavits contain only conclusory assertions. *Meier ex rel. Meier v. Sun Int'l Hotels, Ltd.*, 288

2

F.3d 1264, 1269 (11th Cir. 2002).  Where the plaintiff and defendant have submitted conflicting evidence, the court must construe all reasonable inferences in favor of the plaintiff.  *Id.*

## A. Personal Jurisdiction Under Florida's Long-Arm Statute

To exercise jurisdiction over Suleiman, the Court must find that her conduct placed her within the reach of Florida's Long-Arm Statute, Fla. Stat. § 48.193 (2013), and that the exercise of jurisdiction would comport with the due process requirements of the Fourteenth Amendment.  *See Posner v. Essex Ins. Co., Ltd.*, 178 F.3d 1209, 1214 (11th Cir. 1999).  The reach of the long-arm statute is a question of Florida law, which the Court must construe as would the Florida Supreme Court.  *Meier*, 288 F.3d at 1271. In the absence of Florida Supreme Court precedent, federal courts must adhere to the decisions of Florida's intermediate appellate courts.  *Id.*

Under Florida's long-arm statute, a defendant may be subject to specific personal jurisdiction in Florida courts "for any cause of action arising from the doing of any of the following acts: [including] . . . committing a tortious act within this state."  Fla. Stat. § 48.193(1)(a)(2).  A nonresident defendant need not be physically present in the state in order to commit a tortious act within the state under Florida's Long-Arm statute.  *Wendt v. Horowitz*, 822 So. 2d 1252, 1260 (Fla. 2002).  Under § 48.193(1)(a)(2), the Court has jurisdiction if a tortious acted committed outside Florida causes injury within the state. *See Posner*, 178 F.3d at 1217.  Trademark infringement claims are sufficient to satisfy Florida's long-arm statute because "a nonresident defendant commits a tortious act within [Florida] when he commits an act *outside* the state that causes *injury within Florida*."  *See Louis Vuitton Malletier, S.A. v. Mosseri*, 736 F.3d 1339, 1353 (11th Cir.

3

2013) (citing *Licciardello v. Lovelady*, 544 F.3d 1280, 1283 (11th Cir. 2008)) (internal quotations omitted) (emphasis in original).  Where the alleged trademark infringement took place on a website, the "infringement caused injury and thus 'occurred in Florida by virtue of the website's accessibility in Florida.'" *Id.* at 1354 (quoting *Lovelady*, 544 F.3d at 1283).

Plaintiff argues that Suleiman is subject to personal jurisdiction in this Court because her company's websites, which display the allegedly infringing trademarks, are accessible to customers nationwide, including those in Florida.  (Pl.'s Resp. at 8.) Plaintiff also claims that Defendants derive more revenue from sales to Florida customers than from customers in any other state, and that between January 1, 2013, and September 30, 2013, sales to Florida residents generated over one million dollars in revenue.  (Pl.'s Resp. at 8.)  Therefore, the tortious trademark infringement that Plaintiff alleges Defendants committed through their websites are sufficient to subject Suleiman to personal jurisdiction under § 48.193(1)(a)(2) because the alleged injury occurred in Florida, the allegedly infringing websites can be accessed by customers in Florida, and Plaintiff claims that Defendants derive substantial revenue from sales to Florida residents through their websites.

Suleiman raises two principle arguments in challenging jurisdiction: that she is not subject to this Court's jurisdiction under the corporate shield doctrine, and that she lacks sufficient minimum contacts with Florida to comport with due process (Defs.' Mot. at 4-5; Defs.' Reply at 4-5).

## 1. The Corporate Shield Doctrine

The corporate shield doctrine recognizes the "distinction between a corporate officer acting on one's own and a corporate officer acting on behalf of one's corporation" for purposes of establishing personal jurisdiction over individual plaintiffs. *Doe v. Thompson*, 620 So. 2d 1004, 1006 (Fla. 1993). This doctrine is based on the "notion that it is unfair to force an individual to defend a suit brought against him [or her] personally in a forum with which his [or her] only relevant contacts are acts performed not for his [or her] own benefit but for the benefit of his [or her] employer." *Id.* Notably, however, this doctrine does not shield a corporate officer accused of committing "fraud or other intentional misconduct." *Id.* at 1006 n.1. The Eleventh Circuit has held that a defendant "cannot invoke Florida's corporate shield doctrine" in cases involving intentional torts, including trademark infringement. *See Louis Vuitton*, 736 F.3d at 1354-55.

In support of her argument, Suleiman relies on *Carmel & Co. v. Silverfish, LLC*, No. 1:12-cv-21328-KMM, 2013 WL 1177857, at *5 (S.D. Fla. Mar. 21, 2013). In *Carmel*, the Court declined to exercise personal jurisdiction over an individual defendant who was the managing partner of the defendant company because there was no evidence of the individual's "personal involvement in any of the alleged trademark infringements or tortious conduct at issue." *Id.* The Court also found that the trademark infringement claims against the individual defendant did not constitute "a tort on the level of fraud or intentional misconduct," and the claims were therefore not excluded from the corporate shield doctrine. *Id.* However, *Carmel* was decided before *Louis Vuitton*, in which the Eleventh Circuit unequivocally held that trademark infringement was an intentional tort

5

to which the corporate shield doctrine did not apply. *Louis Vuitton*, 736 F.3d at 1354-55. In an attempt to distinguish *Louis Vuitton*, Suleiman argues that the defendant in that case was accused of "egregious acts," including illegally counterfeiting Louis Vuitton handbags, while Suleiman was simply "performing her duty as a Clear Choice employee by utilizing what she, in good faith, believed to be authorized uses of those marks." (Defs.' Reply at 3-4.)   But nowhere in *Louis Vuitton* does the court parse the claims against the individual defendant to determine the reach of the corporate shield doctrine; the ruling turned exclusively on the fact that an intentional tort was alleged against the defendant.   *Louis Vuitton*, 736 F.3d at 1355 ("Because Louis Vitton alleges that Mosseri committed intentional torts, his corporate shield defense to personal jurisdiction fails under Florida law").   The Court finds *Louis Vuitton* controlling on this issue, and further finds that Suleiman cannot defeat personal jurisdiction based on the corporate shield doctrine.

## B.  Personal Jurisdiction and the Due Process Analysis

Next, the Court must analyze whether the exercise of personal jurisdiction over the Defendant Amy Suleiman comports with the due process requirements of the Fourteenth Amendment. *Meier*, 288 F.3d at 1270.   To determine whether due process is satisfied in specific jurisdiction cases, the Court must consider: (1) whether Plaintiff's claims "arise out of or relate to" Defendant's contacts with the forum; (2) whether Defendant purposefully availed herself of the forum state's privileges and protections, and; (3) whether exercising personal jurisdiction would comport with "traditional notions of fair play and substantial justice."   *See Louis Vuitton*, 736 F.3d at 1355 (internal

citations omitted); *see also Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472-73 (1985); *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945).

For a claim to "arise out of or relate to" a defendant's contact with the forum state, the contact must be a "but-for" cause of the claim, and the claim must be a "foreseeable consequence" of the contact. *See Oldfield v. Pueblo de Bahia Lora, S.A.*, 558 F.3d 1210, 1222-23 (11th Cir. 2009). In a case involving trademark infringement over a website, the infringing use of a mark on a website accessible in Florida is sufficient to establish that the claim is related to defendant's contact with Florida. *Lovelady*, 544 F.3d at 1284-85 n.4. Because Plaintiff alleges that Suleiman infringed on Plaintiff's trademark through a website accessible in Florida, the claim satisfies the "relatedness" prong of the due process analysis. *Id.; see also Louis Vuitton*, 736 F.3d at 1355-56.

To determine whether the purposeful availment prong has been met in a case involving an intentional tort, courts may apply two different tests: the traditional "minimum contacts" test and the "effects test." *Louis Vuitton*, 736 F.3d at 1356. Under the minimum contacts test, the court must determine whether a nonresident defendant's contacts with the forum state (1) are related to the plaintiff's cause of action; (2) involve some act by which the defendant purposefully availed herself of the privileges of doing business within the forum; and (3) are such that the defendant should reasonably anticipate being haled into court in the forum. *Id.* at 1357 (internal citation omitted). The "effects test," on the other hand, provides that a "nonresident defendant's single tortious act can establish purposeful availment, without regard to whether the defendant had any other contacts with the forum state." *Id.* at 1356 (citing *Lovelady*, 544 F.3d at

1285); *see also Calder v. Jones*, 465 U.S. 783 (1984).   Under this test, purposeful availment may be established where the tort (1) was intentional; (2) was aimed at the forum state; and (3) caused harm that the defendant should have anticipated would be suffered in the forum state. *Louis Vuitton*, 736 F.3d at 1356 (citing *Lovelady*, 544 F.3d at 1285-86).

Defendant Suleiman's contacts with Florida clearly do not satisfy the traditional minimum contacts test. Plaintiff has not identified any contact with the state of Florida or any acts committed within the state of Florida by which Suleiman has purposefully availed herself of the state's privileges.   Suleiman has never resided in Florida, she has never owned any property or engaged in any business in Florida, and she has visited the state only once, for a personal vacation in 2009.  Suleiman Aff. ¶¶ 12-14, 17.

Plaintiff argues that Suleiman's conduct does satisfy the "effects test" for establishing purposeful availment.  (Pl.'s Resp. at at 9.)   Because Defendants were aware that Plaintiff was located in Florida, and because Defendants' allegedly infringing websites could be accessed by Florida residents and derived substantial revenue from Florida customers, Plaintiff argues that the *Calder* "effects test" is satisfied. *Id.* at 10.

However, the Court notes Plaintiff seeks to establish jurisdiction over Suleiman based only on corporate conduct, without alleging in the Complaint any particular facts establishing that Suleiman herself purposely availed herself of this forum, even under the more relaxed standards of the *Calder* "effects test."   In alleging that Suleiman committed an intentional tort "aimed at the forum state," the Plaintiff must allege some specifics facts indicating that Suleiman "meaningfully directed[ed] activities" toward Florida. *See Blueskygreenland Envtl. Solutions, LLC v. 21st Century Planet Fund, LLC,*

8

No. 12-81234-CIV, 2014 WL 1341277, at *6 (S.D. Fla. April 4, 2014) (citing *Fielding v. Hubert Burda Media, Inc.*, 415 F.3d 419, 428 (5th Cir. 2005)). In the absence of more specific allegations of Suleiman's conduct[1], the Court finds that Plaintiff has failed to establish the "purposeful availment" prong of the due process analysis, and for this reason Defendant Suleiman's motion to dismiss is GRANTED.

### III.    Motion to Dismiss for Improper Venue

Next, Defendants argue that the Court should dismiss this case for improper venue pursuant to Fed. R. Civ. P. 12(b)(3). Plaintiff, however, argues that venue is proper in this district under § 1391(b), which states that venue is appropriate in the following: (1) a district where any of the defendants reside, if "all defendants are residents of the State in which the district is located," (2) a district in which "a substantial part of the events or omissions giving rise to the claim occurred," or, (3) if there is no district in which the action can otherwise be brought, "any judicial district in which any defendant is subject to the court's personal jurisdiction." *See* 28 U.S.C. § 1391(b). The burden is on a plaintiff to establish venue under § 1391(b). *See, e.g., Wai v. Rainbow Holdings*, 315 F. Supp. 2d 1261, 1268 (S.D. Fla. 2004); *Vivant Pharm., LLC v. Clinical Formula, LLC*, No. 10-21537-Civ, 2011 WL 1303218, at *2 (S.D. Fla. Mar. 31, 2011). However, there is a presumption against disturbing a plaintiff's initial choice of forum. *La Seguridad v. Transytur Line*, 707 F.2d 1304, 1307 (11th Cir. 1983). For purposes of § 1391(b), "[a] 'substantial part' of the events giving rise to a trademark claim occurs in any district where customers are likely to be confused by the accused goods, 'whether

---

[1] For example, in *Lovelady*, the court held that Plaintiff had established personal jurisdiction over the out-of-state defendant based on allegations that the defendant created the website containing the allegedly infringing material that gave rise to Plaintiff's claim. *See Lovelady*, 544 F.3d at 1283. In this case, the Complaint fails to allege what, if any, role Suleiman played in the alleged infringement.

that occurs solely in one district or many.'" *Vivant*, 2011 WL 1303218 at *5 (citing *Cottman Transmission Sys. v. Marino*, 36 F.3d 291, 295 (3d Cir. 1994)).

Plaintiff's Complaint fails to specify the subsection of § 1391(b) under which venue is proper in this district. (Compl. ¶ 8.) Nonetheless, Suleiman's declarations establish that Defendants' allegedly infringing websites are accessible to consumers nationwide and that their advertisements do not target specific states. Plaintiff also contends that a substantial part of Defendants' revenue derives from sales to Florida residents and that the Defendants, through their websites, sell more products to Florida residents than to residents of any other state. This evidence is sufficient to establish that a "substantial part" of the events giving rise to Plaintiff's claims occurred in Florida and that consumer confusion is likely to occur in Florida. Thus, the Court finds that venue is proper in this district under § 1391(b)(2).

## IV.   Motion to Transfer Venue Under 28 U.S.C. § 1404(a)

Defendants' Motion to Transfer Venue to the District Court for the Northern District of Ohio is governed by 28 U.S.C. § 1404(a), which provides that "[f]or the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."[2] 28 U.S.C. § 1404(a). Trial courts have "broad discretion" to determine whether transfer is appropriate under § 1404(a). *See Trafalgar Capital Specialized Inv. Fund v. Hartman*, 878 F. Supp. 2d 1274, 1281 (S.D. Fla. 2012); *Trace-Wilco, Inc. v. Symantec Corp.*, No. 08-80877-CIV, 2009 WL 455432, at *1 (S.D. Fla. Feb. 23, 2009).

---

[2] The Court need not address Defendants' alternative argument that transfer is appropriate under 28 U.S.C. § 1406, because that provision applies only where a case has been filed in a district in which venue is not proper. *See* 28 U.S.C. § 1406(a).

In order to prevail on a § 1404(a) motion, Defendant must establish the following: "(1) an adequate alternative forum is available, (2) the private interests of the parties weigh in favor of transfer, and (3) the public interest weighs in favor of transfer." *Trafalgar Capital*, 878 F. Supp. 2d at 1282 (citing *Cellularvision Tech. & Telecomms., L.P. v. Cellco P'ship,* No. 06–60666–CIV, 2006 WL 2871858, at *2 (S.D. Fla. Sept. 12, 2006)). Other factors the Court considers include "plaintiff's initial choice of forum, convenience of the parties and witnesses, relative ease of access to sources of proof, availability of compulsory process for witnesses, location of relative documents, financial ability to bear the costs of change, and the public interest." *Steifel Labs., Inc. v. Galderma Labs., Inc.*, 588 F. Supp. 2d 1336, 1338-39 (S.D. Fla. 2008) (citing *Gonzalez v. Pirelli Tire, LLC,* No. 07-80453-CIV, 2008 WL 516847, at *2 (S.D. Fla. Feb. 22, 2008); *Thermal Techs., Inc. v. Dade Serv. Corp.,* 282 F. Supp. 2d 1373, 1375 (S.D. Fla. 2003)).

Here, Defendant argues that this case should be transferred to the Northern District of Ohio, Eastern Division, because it would be a more convenient forum and because this case could have been brought there originally. (Defs.' Mot. at 14.) The Court agrees that this suit could have originally been filed in Ohio because § 1391(b)(1) provides that venue is proper in any judicial district located in a state in which all of the defendants reside. *See* 28 U.S.C. § 1391(b)(1). Both Clear Choice and Suleiman reside in Ohio for purposes of the venue statute because Suleiman lives and works in Ohio and Clear Choice is an Ohio corporation with its principal place of business in Middleburg Heights, Ohio. (Compl. ¶¶ 2-4, Pl.'s Resp. at 3.) Because the Northern District of Ohio is an adequate alternative forum, the Court must weigh the factors and

11

conduct a § 1404(a) analysis to determine whether transfer to that forum is appropriate. *See Trafalgar Capital*, 878 F. Supp. 2d at 1286.

A plaintiff's choice of forum will not be disturbed unless "it is clearly outweighed by other considerations." *Id.* (citing *Robinson v. Giarmarco & Bill, P.C.*, 74 F.3d 253, 260 (11th Cir. 1996)) (quotations and citations omitted). Bearing in mind the weight that is afforded to Plaintiff's initial forum choice, the Court then considers the convenience of any nonparty witnesses. *See Steifel Labs.*, 588 F. Supp. 2d at 1338-39. Defendants assert that, although the parties have not yet determined their witness lists, "it is likely that [both parties] will call Clear Choice personnel, who are residents of Ohio." (Defs.' Mot. at 14). However, when witnesses are employees of a party and their presence at trial can be obtained by that party, less weight is given to that factor. *See Mason v. Smithkline Beecham Clinical Labs.*, 146 F. Supp. 2d 1355, 1361 (S.D. Fla. 2001). The convenience of the parties is also not a determinative factor in this case. While Defendants argue that Ohio offers a substantially more convenient forum because all the Defendants reside there (Defs.' Mot. at 15), Plaintiff has an equally compelling argument for litigating in Florida, where Plaintiff has its principal place of business (Pl.'s Resp. at 14). Similarly, both parties argue that the relevant documents are located in their respective home states. (Defs.' Mot. at 15, Pl.'s Resp. at 14.) However, as Plaintiff's Response points out, "in light of technological advancements in document imaging, management, and retrieval, it is unlikely that document production will be unduly burdensome if transfer is denied." *Mason*, 146 F. Supp. 2d at 1364; (*see* Pl.'s Resp. at 14).

After carefully reviewing the parties' arguments regarding the locus of operative facts, the relative means of the parties, and this forum's familiarity with the controlling law, the Court finds that these factors are in balance. When a defendant fails to carry the burden of showing that a transfer is appropriate and the factors are balanced, as they are in this case, the Court defers to a plaintiff's initial forum choice. *See SME Racks, Inc. v. Sistemas Mecanicos Para Electronica, S.A.,* 382 F.3d 1097, 1103 (11th Cir. 2004) ("If any presumption exists in favor of the plaintiffs' choice . . . by definition the plaintiffs' choice must win if all other factors are equal."); *Mason,* 146 F. Supp. 2d at 1364; *Trafalgar Capital,* 878 F. Supp. 2d at 1290.

For all of the foregoing reasons, it is **ORDERED** that:

1. Defendant Suleiman's Motion to Dismiss for lack of personal jurisdiction (D.E. 13) is GRANTED. Plaintiff shall have 14 days from the date of this Order to file an Amended Complaint consistent with this Order.

2. Defendant's Motion to Dismiss or Transfer Venue (D.E. 13) is **DENIED**.

3. Defendant's Request for Oral Argument (D.E. 13) is **DENIED**.

**DONE AND ORDERED** in Chambers, at Miami, Florida, this _14_ day of July, 2014.

KATHLEEN M. WILLIAMS
UNITED STATES DISTRICT JUDGE